Jean **DANBURY**, Appellant,

v.

**JACKSON COUNTY, MISSOURI,**
**Respondent.**

**No. WD 55681.**

Missouri Court of Appeals,
Western District.

Submitted Nov. 3, 1998.

Decided March 23, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 27, 1999.

Jerrold Kenter, Kansas City, for Appellant.

Arthur A. Hogg, Kansas City, for Respondent.

Before ULRICH, P.J.; SMART and EDWIN H. SMITH, JJ.

JAMES M. SMART, Jr., Judge.

Jean Danbury appeals the trial court's judgment in favor of Jackson County in a personal injury action arising out of a slip and fall. Danbury contends that the trial court abused its discretion in excluding photographs of the steps on which she fell.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

## Factual Background

On August 29, 1992, Jean Danbury and her family were visiting the gift shop at Old Missouri Town, at Lake Jacomo in Jackson County, Missouri. In order to get to the gift shop, Danbury had to climb steps made of natural stone, held together by mortar. Danbury walked up the steps and entered the gift shop without incident. However, as she was leaving the shop, she caught her foot on the steps and twisted her leg. Danbury claimed that her foot got caught in a hole where the mortar had

come loose from between the steps. Danbury eventually had surgery on her knee and ankle as a result of tripping on the steps. Jackson County has at no time denied responsibility for the maintenance of the steps but denied that there was a hole in the mortar at the time Danbury fell.

At trial, Danbury attempted to introduce photographs of the steps into evidence. Danbury planned to use these photographs to show the exact location at which she fell and also to demonstrate that there could have been a hole in the mortar between the steps at the time of her fall. The photographs in question, which were taken well after the incident, show no mortar missing between the stones. Jackson County objected to the introduction of the photographs on the ground that a proper foundation had not been laid for their introduction into evidence, and on the ground that they showed subsequent remedial repairs. The trial court sustained Jackson County's objections, refusing the introduction of the photographs into evidence.

At the close of all the evidence, the jury failed to find fault on behalf of either party. Danbury filed a timely motion for new trial on the ground that, *inter alia,* the trial court erred in not allowing the introduction of the photographs. The trial court overruled Danbury's motion, and Danbury appeals.

### Exclusion of Photographs

Danbury's sole point on appeal is that the trial court erred in excluding the photographs of the steps. Jackson County responds that Danbury failed to lay a proper foundation for the introduction of the photographs because the photographs were taken more than a year after the accident. Jackson County contends that Danbury wants to use the pictures to argue that subsequent repairs had been made to the steps. Jackson County argues that because evidence of subsequent

repairs is not admissible, the trial court properly excluded the photographs.

■ The admission or exclusion of photographs from evidence is within the discretion of the trial court. *State ex rel. Missouri Highway & Transp. Comm'n v. Vitt,* 785 S.W.2d 708, 712 (Mo.App.1990). We will not disturb the trial court's decision absent an abuse of discretion. *Id.* An abuse of discretion occurs only where the trial court's decision is clearly against the logic of the circumstances, evincing a lack of careful and deliberate consideration. *House v. Missouri Pac. R.R. Co.,* 927 S.W.2d 538, 540 (Mo.App.1996).

A review of the trial transcript is helpful in determining Danbury's point on appeal. At trial Danbury testified as follows regarding the photographs:

Q: Okay. I'll hand you what's been marked as Plaintiff's Exhibits 1 and 2, and I'll ask you if those are true and exact copies or true and accurate—if that is a true and accurate picture of the steps that you encountered on your way out that day?

A: Yes, those are the steps, the stone steps that I went up and down.

After several more unrelated questions, Danbury's counsel, Mr. Kenter, moved for the admission of the photographs into evidence. Defense counsel, Mr. Hogg, objected on grounds of insufficient foundation and also on the ground that the pictures show "subsequent remedial repairs."

The court sustained the defense's objection to the introduction of the photographs into evidence. Plaintiff's attorney then elicited the following additional testimony from Danbury regarding the photographs:

Q: Let's talk a little bit more about the steps that you came out on. You indicated that Exhibits 1 and 2 show the steps you came out on, is that correct?

A: Correct.

Q: And—do Exhibits 1 and 2 accurately depict the stone as it was when you came out?

A: The stone—I mean—everything else is the same except for where my foot went into the—

Q: Okay. Is the brick the same?

A: Yes.

Q: Are the stones in the same position when you encountered them?

A: Yes.

Q: Okay. Is there anything in terms of the steps themselves—excuse me—the fence, was the white fence there at the time you fell?

A: The fence was there, but it—it was in need of repair, also, so—

Q: But it was there as depicted in this picture, is that correct?

A: Yes.

Q: Okay. And you step out the door, is that correct?

A: Correct.

Q: Okay. And—Exhibits 1 and 2 show the position of your feet when you fell?

A: Right.

Q: Do they show the exact place where you fell?

A: Yes.

The defense objected that the photographs were being published to the jury when they had not been admitted to evidence. Plaintiff's attorney then moved to admit the photographs into evidence, at which point the following exchange at the bench was had:

MR. HOGG: The same objection. There's still no proof that they're fair and accurate representations of the steps at the time of the incident. There's been an obvious attempt to show subsequent remedial repairs, which are clearly inadmissible to show prior negligence on our part. For that reason alone they should be inadmissible.

MR. KENTER: I didn't ask anything about the mortar. I asked her to identify the steps. I didn't do anything.

THE COURT: I think she said they were the same except for the part she stepped in. There's an explanation of why that is.

MR. HOGG: The only way that could be done would be subsequent repair.

THE COURT: I understand. I'll sustain the objection.

Again, Plaintiff's attorney attempted to lay a foundation for the admission of the photographs into evidence:

Q: (By Mr. Kenter) Now—can you tell us in regard to Exhibits 1 and 2, do the position of your feet in Exhibits 1 and 2 fairly depict the position of your feet at the time you fell?

A: Yes.

Q: Okay. Now, can you tell us what caused you to fall?

A: There was no mortar between those steps where my foot is in that picture. That's what caused me to fall.

Q: All right. Now, which foot was it that encountered the hole you described?

A: My right one.

Q: How big was the hole?

A: You can see from the picture, that—

Q: Referring now to Exhibit 1, correct?

A: Okay. The mortar that's there, and my foot is—

MR. HOGG: Objection, Your Honor—this is the exact problem.

(Whereupon, the following proceedings were had AT THE BENCH:)

THE COURT: He's still laying a foundation.

MR. HOGG: I understand that but we're going into subsequent remedial repair and that is clearly inadmissible to show prior negligence. That's exactly—

THE COURT: Let's hear Mr. Kenter's response. He's objecting on the basis that it shows remedial repair. You see, when we were talking in chambers I understood that the witness was going to say, yes, this picture fairly and accurately represents

the situation that existed at the time I fell. Evidently that's not what she's testifying to. She's testifying it's the same except for the remedial repairs that he's objecting to.

MR. KENTER: I'll try it again, Judge. She's not testifying to that. She's testifying that the steps themselves were the steps she fell on. She's testifying as to the exact location of where she fell. There is no evidence as to when—maybe the mortar was still there. That's something—maybe there was mortar there. His evidence is going to show no mortar was missing. So he's going to say subsequent repairs; how can he say that when he also takes the position that mortar wasn't missing in the first place?

THE COURT: I don't know, but this is something I have to rule on here, and I've got, I think, a legitimate objection. In order to create the foundation—of course, I'm sure that the pictures are essential to be placed in evidence for your case but if you want the pictures in, you need to show by foundation that this photograph depicts it as it was at the time and I think she's about to say that it's different, in that there was mortar that wasn't there. Isn't that what you expect she's about to say?

\* \* \*

Plaintiff's attorney again attempted to lay a proper foundation for the admission of the photographs into evidence:

Q: (By Mr. Kenter) Now, Ms. Danbury, referring to Exhibit 1, does Exhibit 1, first of all, show the stairs where you fell?

A: Yes.

Q: Is that you pictured—your feet pictured in Exhibit 1?

A: Yes.

Q: And is that the exact position where your right foot was when you came out of the building and to the best of your recollection, when you fell?

A: Yes.

MR. KENTER: Your Honor, I offer Exhibit 1 in evidence.

(Whereupon, the following proceedings were had AT THE BENCH:)

MR. HOGG: Again, Your Honor, the foundation is not laid.

THE COURT: The objection has to be sustained. The witness already testified that it's different in some respects that it was at the time of the accident.

## Proper Foundation

Jackson County's first objection to the photographs was that a proper foundation had not been laid for their introduction into evidence. Generally, a proper foundation is laid where testimony is given "that the offered object is the object which was involved in the incident and that the object's condition is substantially unchanged." *Jackson by Jackson v. Jackson*, 875 S.W.2d 590, 592 (Mo.App.1994); *e.g., Annin v. Bi–State Dev. Agency*, 657 S.W.2d 382, 385 (Mo.App.1983). However, it is well established that photographs of an accident scene may be admissible even if they are taken well after the accident occurred if any changes in the accident site are explained. *State ex rel. State Highway Comm'n v. Eilers*, 406 S.W.2d 567, 571 (Mo.1966); *Wellman v. Wehmeyer*, 965 S.W.2d 348, 350 (Mo.App.1998); *Berry v. Federal Kemper Ins. Co.*, 621 S.W.2d 948, 951 (Mo.App.1981); *e.g., Hritz by Hritz v. Slawin*, 706 S.W.2d 296, 297 (Mo.App. 1986) (finding adequate foundation was laid where motorist testified that a photo was a fair and accurate representation of the accident scene and explained the discrepancies between the photo and the accident scene at the time of the accident).

When asked if the photographs were true and accurate representations of the steps where she fell, Danbury answered, "Yes, those are the steps, the stone steps

that I went up and down." She testified that the position of the stones was the same, the brick was the same, and the fence near the steps was the same. Danbury went on to state that the picture accurately represented the steps where she fell *except* that it did not show the hole in the mortar which caused her to fall, thereby explaining the difference between the accident site and the photograph. An adequate foundation was laid to enter the photographs of the steps into evidence.

## Subsequent Remedial Measures

Jackson County contends, however, that the changes in the accident site can be explained only by subsequent remedial measures, which themselves are inadmissible. While it is generally true that evidence of subsequent repairs made to defective property are inadmissible to prove negligence, *Bellistri v. City of St. Louis*, 671 S.W.2d 405, 407 (Mo.App.1984), Jackson County overlooks the well-established principle that evidence showing subsequent remedial measures may be admissible if offered for a purpose other than drawing an inference of negligence from the fact of the repairs. *Atcheson v. Braniff Int'l Airways*, 327 S.W.2d 112, 116 (Mo. 1959); *Hewitt v. Empiregas, Inc. of Sikeston*, 831 S.W.2d 744, 747 (Mo.App.1992). For instance, evidence showing subsequent remedial measures may be admissible to show the condition of the accident site at the time the accident occurred. *Grothe v. St. Louis–San Francisco Ry. Co.*, 460 S.W.2d 711, 718 (Mo.1970) (testimony concerning installation of flashing lights at railroad crossing admissible to explain how photographed scene differed from scene at time of collision); *Hefele v. National Super Markets, Inc.*, 748 S.W.2d 800, 803 (Mo.App.1988) (where defendant disputed existence of ice on surface of walkway, evidence that salt was brought to the site where plaintiff claimed he fell on ice was held admissible to show that spot was icy).

When objecting to the photographs, the attorney representing the county, Mr. Hogg, stated, "there's been an obvious attempt to show subsequent remedial repairs, which are clearly inadmissible *to show prior negligence on our part.*" Mr. Hogg was correct that the photographs were inadmissible for the purpose of drawing an inference of negligence from the fact of the repair. However, evidence which is inadmissible for one purpose may be admissible for another. *Hefele*, 748 S.W.2d at 803. If photographs showing subsequent measures were never admissible, a defendant would always be able to keep from the jury any photograph of the site of an alleged property defect simply by conducting repairs before the plaintiff has an opportunity to take a photograph. Such was certainly not the intention of the general rule excluding evidence of subsequent remedial measures to show negligence.

In *Rust v. Hammons*, 929 S.W.2d 834, 836 (Mo.App.1996), the plaintiff, whose car was damaged in flooding which occurred in the parking garage of a hotel, contended that the hotel failed to warn her of the risk of flooding. Plaintiff sought to introduce a photograph taken after the flooding incident which showed the hotel had installed a sign warning of flash flooding. *Id.* at 837. The defense objected to the photograph as showing a subsequent remedial measure. Plaintiff offered the picture, however, as rebuttal to the hotel's statement that the hotel was operating without any modifications. *Id.* The court held that the trial court did not abuse its discretion in admitting the photograph for that limited purpose. *Id.* at 838.

In *Rust*, we discussed the fact that the justification for generally prohibiting evidence of subsequent remedial measures is to avoid discouraging proprietors from improving the safety of their property after an injury has occurred. *Id.* at 837. Also, subsequent remedial measures may not always be relevant as to conditions at the time in question. *Id.* However, the rationale for excluding evidence of subsequent remedial measures does not, we be-

lieve, erect an impenetrable wall against the admission of photographs by plaintiffs who have a legitimate need to let juries see the site of their injury. Thus, such photographs will generally be admissible in cases where the photographs have evidentiary value independent of such repairs. *See e.g., Hickey v. Kansas City Southern Ry. Co.,* 290 S.W.2d 58, 62 (Mo. 1956) (photographs of changes to railroad crossing admitted in rebuttal to statement of defendants' counsel that such changes were not possible). The drafters of the Federal Rules of Evidence recognized the limits of the rule against proof of subsequent remedial measures in Rule 407:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Of course, there may be cases in which the evidentiary value of an exhibit is quite limited, and the risk of prejudice or confusion is substantial because of the subsequent measures. Here, however, the introduction of these photographs would have aided the jury in visualizing the uneven steps formed from the stones on which Ms. Danbury fell. "Generally speaking, a photograph is far superior to words as a means of description for, as the saying goes, one picture is worth a thousand words." *State v. Sherrill,* 657 S.W.2d 731, 737 (Mo.App.1983). The evidentiary value of the photographs as a visual aid of the site of the injury was sufficient to overcome an objection based only on the concern that the photographs showed subsequent remedial measures. Jackson County points to no other risk of confusion or prejudice, and relies solely on the contention that evidence of subsequent reme-

dial measures is inadmissible. Due to the photographs' exclusion from evidence, Danbury was limited to narratively presenting a description of the accident site, prejudicing her ability to present her case in an effective manner. We believe the photographs were important to plaintiff's case and we conclude that exclusion of the photographs was an abuse of discretion.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

ULRICH, P.J., and EDWIN H. SMITH, J. concur.