

# SUPREME COURT OF MISSOURI
## en banc

TANISHA ROSS-PAIGE,                              )
                                                 )
                            Respondent,           )
                                                 )
v.                                               )        No. SC95214
                                                 )
SAINT LOUIS METROPOLITAN POLICE                  )
DEPARTMENT, STEVEN A. GORI,                       )
MICHAEL A. DEEBA, SR., SAINT LOUIS               )
BOARD OF POLICE COMMISSIONERS,                   )
RICHARD H. GRAY, BETTYE BATTLE-                  )
TURNER, THOMAS J. IRWIN, AND                     )
FRANCIS G. SLAY,                                 )
                            Appellants.           )

**APPEAL FROM THE CIRCUIT COURT OF THE CITY OF SAINT LOUIS**
The Honorable Timothy J. Wilson, Judge

*Opinion issued June 28, 2016*

The Saint Louis Metropolitan Police Department (hereinafter, "SLMPD"), Steven A. Gori (hereinafter, "Sgt. Gori"), Michael A. Deeba, Sr. (hereinafter, "Lt. Deeba"), the Saint Louis Board of Police Commissioners (hereinafter, "the Board") and its individual members (hereinafter and collectively, "Defendants") appeal the circuit court's judgment in favor of Tanisha Ross-Paige (hereinafter, "Ross-Paige"), a former police officer. Ross-Paige alleged Defendants retaliated against her in violation of the Missouri Human Rights Act, section 213.010, *et seq.*, RSMo 2000,[1] after she filed a complaint of sexual

---

[1] All statutory references are to RSMo 2000, as supplemented, unless otherwise indicated.

harassment and retaliation with SLMPD. Defendants raise two points on appeal, alleging instructional error and juror misconduct warrant a new trial. This Court holds the circuit court erred in tendering Jury Instruction No. 8 because there was no substantial evidence to support a finding that the Board unjustly refused or delayed paying Ross-Paige's disability claim. Accordingly, this Court need not address Defendants' juror misconduct claim. The circuit court's judgment is reversed, and the cause is remanded.[2]

**Factual and Procedural History**

In 2007, Ross-Paige worked as a police officer for SLMPD in the sixth district. Sgt. Gori was one of Ross-Paige's immediate supervisors. Sgt. Gori made numerous inappropriate sexual comments toward Ross-Paige, including commenting about her body and asking her out on dates. Sgt. Gori gave Ross-Paige a mock "wanted" poster that contained her photograph, her name, an alias of "Apple Bottom," and stated, "Subject wanted for having the 'BADDEST BODY' in the St. Louis area. Use extreme caution when approaching this subject. Approach this subject from behind for your protection." The "wanted" poster was forwarded from Sgt. Gori's work e-mail account. Ross-Paige complained about the comments, telling Sgt. Gori they were unwelcome and inappropriate. However, Sgt. Gori would laugh and tell Ross-Paige that she "was in a man's position and [she] needed to deal with it."

In 2009, Ross-Paige was transferred to the canine unit. Lt. Deeba was the commander of the canine and SWAT units. In 2011, Sgt. Gori also transferred to the

---

[2] This Court transferred this case after an opinion by the Missouri Court of Appeals, Eastern District. Mo. Const. art. V, sec. 10. Portions of the court of appeals opinion are incorporated without further attribution.

2

canine unit and became Ross-Paige's immediate supervisor again. Sgt. Gori resumed making inappropriate sexual comments and overtures to Ross-Paige. On one occasion, Sgt. Gori told Ross-Paige that he could "push everything off of his desk and just have his way with [her] …." When Ross-Paige interacted with an openly gay female officer, Sgt. Gori asked Ross-Paige if she "switched teams on him." Sgt. Gori stated that he assumed Ross-Paige's husband, who was a firefighter, was not "putting out the fires like he used to" but that Sgt. Gori could "handle that."

Ross-Paige felt uncomfortable reporting Sgt. Gori's advances because she was aware of other instances in which officers were retaliated against for complaining. Sgt. Gori told Ross-Paige that if she did not do what he wanted and did not stop "being so hard," he would have her transferred from the canine unit, she would lose her dog, and he would make her life "a living hell." Further, Ross-Paige attended a meeting in which Lt. Deeba threatened other officers for stepping out of line. Lt. Deeba then sent out an e-mail informing the canine unit members that he would not tolerate them "throw[ing] each other under the bus" and directing them to work together and treat each other like family.

At the beginning of her shift on June 2, 2011, Ross-Paige responded to a hostage situation with her dog. After the scene was secured, Sgt. Gori reprimanded Ross-Paige for failing to report to him when she arrived and informed her that he was changing her shift. Ross-Paige became angry and argued with Sgt. Gori in the presence of other commanding officers, including Sgt. Craig Chromoga (hereinafter, "Sgt. Chromoga"), who was the acting commander at the hostage situation. When Sgt. Gori spoke to Ross-Paige later that day, he told her, "all gloves are off now," which Ross-Paige interpreted to

3

mean the end of her opportunities with the canine unit.

On June 3, 2011, Ross-Paige filed an "equal employment opportunity complaint form" with SLMPD's human resources department, claiming she was subject to sexual discrimination and retaliation. Ross-Paige indicated Sgt. Gori retaliated against her because she would not accept his sexual advances. Ross-Paige remained in the canine unit but began reporting to a different supervisor after filing the complaint.

On June 6, 2011, Sgt. Chromoga completed a performance observation form regarding Ross-Paige's actions during the hostage situation. The form alleged Ross-Paige committed misconduct by failing to notify her supervisor upon arrival at the scene and that she was reluctant to accept a shift change. Ross-Paige was told she needed to improve her "knowledge/compliance with rules and authority" and "communication skills." Ross-Paige was never disciplined prior to this incident.

That same day, Ross-Paige received an e-mail from Lt. Deeba admonishing her that it was not a subordinate's job to question an order or to wonder where the sergeant is during a call. The e-mail further informed Ross-Paige that a subordinate should not be "disrespectfully insubordinate and act irrational." Lt. Deeba informed Ross-Paige that he tries to supervise the canine unit "like a Marine Corps unit" and that he "bark[s] his orders, say[s his] piece, then we move on as a team." The e-mail also referenced that Ross-Paige had "other issues." Ross-Paige interpreted "other issues" as a reference to the complaint she filed against Sgt. Gori.

In mid-June 2011, Ross-Paige went on approved medical leave and returned in late September 2011. While Ross-Paige was on leave, Lt. Deeba received a report from

4

an outside equal employment opportunity investigator that found Ross-Paige's allegations against Sgt. Gori were without merit. However, the investigator recommended that SLMPD's human resources department refer the matter to internal affairs for further action related to the "wanted" poster, that Sgt. Gori receive counseling regarding SLMPD policy and how to communicate professionally and legally with employees, and have Ross-Paige continue to report to someone other than Sgt. Gori.

Lt. Deeba subsequently sent two e-mails to his supervisors and members of the canine unit informing them that Ross-Paige's complaints were found to be without merit and requesting that Ross-Paige be transferred from the canine unit. Lt. Deeba alleged that "since the beginning of this erroneous complaint to the completion of this investigation, this officer has disrupted the operations of both SWAT and Canine." Lt. Deeba indicated other canine unit members felt unsafe, did not trust Ross-Paige, and did not want to work with her. Lt. Deeba cited Ross-Paige's "poor work ethic" and insubordination as further grounds to be removed from the canine unit. Lt. Deeba also indicated Ross-Paige would have to complete remedial training with her dog before returning to work due to the poor upkeep of her dog while she was out on leave.

After returning to work, Ross-Paige completed four weeks of remedial training with her dog. Lt. Deeba later sent an e-mail to his supervisors and the entire canine unit prohibiting Ross-Paige from using the computers in the canine unit office.

On January 4, 2012, Ross-Paige was injured when another officer's canine attacked her during a training exercise. Ross-Paige sustained injuries to her left ankle and knee. The knee injury required surgery. Ross-Paige required ongoing treatment for

5

her knee injury, and she worked in SLMPD's communication department during that time. Ross-Paige's dog was kenneled, and Ross-Paige was denied permission to visit him.

In October 2012, SLMPD informed Ross-Paige that she had reached maximum medical improvement and had sustained permanent injuries that would preclude her from resuming her duties as a police officer. The letter informed Ross-Paige she would be dismissed from the officer rolls and had fifteen days to file for a "disability pension." If Ross-Paige failed to file for a disability pension, SLMPD would file the claim on her behalf. A subsequent letter informed Ross-Paige to contact the Police Retirement System of St. Louis (hereinafter, "police retirement system") regarding her disability pension and SLMPD's human resources department regarding long-term disability. Ross-Paige subsequently applied for a disability pension and long-term disability.

Ross-Paige filed claims with the Missouri Human Rights Commission in October and November 2012. After receiving right to sue letters, Ross-Paige filed suit under the Missouri Human Rights Act, alleging Defendants discriminated against her on the basis of sex and retaliated against her for filing an equal employment opportunity complaint.

In March 2014, the circuit court held a five-day, bifurcated jury trial. The jury found in Defendants' favor on the discrimination claim but found in Ross-Paige's favor on her retaliation claim. The jury awarded Ross-Paige $300,000 in compensatory damages and $7.2 million in punitive damages.[3]

---

[3] Ross-Paige filed a post-trial motion to alter or amend the judgment to include an award of attorneys' fees, costs, and prejudgment and post-judgment interest. Defendants filed a

6

After the trial, a juror contacted one of Defendants' attorneys and discussed an alleged incident of juror misconduct. Defendants filed timely motions for judgment notwithstanding the verdict and for new trial, raising challenges to Jury Instruction No. 8, the verdict director, and juror misconduct, among other claims. The circuit court held an evidentiary hearing on the juror misconduct claim. The circuit court overruled Defendants' motions in their entirety. Defendants appeal.

## Instructional Error

Defendants argue the circuit court erred in tendering Instruction No. 8 to the jury because the instruction submitted alternative theories of recovery, not all of which were supported by substantial evidence. Defendants contend that there was no competent evidence to support the theory that the Board refused or delayed Ross-Paige's disability claim and that under Missouri law, exclusive authority over Ross-Paige's application for a disability pension lies with the police retirement system, rather than the Board.

Instruction No. 8 stated in pertinent part:

Your verdict must be for [Ross-Paige] and against … the [b]oard …on [Ross-Paige's] claim of unlawful retaliation if you believe:

First, [D]efendants discharged [Ross-Paige] or gave [her] a negative write up or assigned [her] with unfavorable shifts or denied [her] paid time off to attend training or failed to allow [her] to apply for the sergeant's exam or *unjustly refused or delayed [her] disability claim* or created a severe and pervasive hostile work environment for [Ross-Paige], and

---

motion to reduce the punitive damages award pursuant to the statutory cap set forth in section 510.265. The circuit court subsequently entered a judgment increasing Ross-Paige's compensatory damages award to $510,190 and reducing the punitive damages award to $2,550,950.

7

Second, [Ross-Paige's] complaint of sexual harassment or refusal to submit to sexual advances was a contributing factor in such discriminatory acts, and

Third, as a direct result of such conduct, [Ross-Paige] sustained damage.

(Emphasis added).

### *Preservation of Error*

Initially, this Court must determine whether Defendants have preserved their claim of instructional error for appellate review. Rule 70.03 requires that counsel "make specific objections to instructions considered erroneous." This rule further instructs that "[n]o party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Finally, Rule 70.03 requires that the objection be raised in a motion for new trial. "Timely objections [to an instruction] are required as a condition precedent to appellate review in order to afford the trial court an opportunity to correct any mistakes immediately and inexpensively without risking the delay and expense of an appeal and a retrial." *Gomez v. Constr. Design, Inc.*, 126 S.W.3d 366, 371 (Mo. banc 2004).

Defendants made several specific objections to Instruction No. 8 at the instruction conference. Regarding Ross-Paige's disability claim, Defendants stated:

> [W]e object to the phrase, or unjustly refused or delayed [Ross-Paige's] disability claim, as again, there's no evidence of this. It's not a tangible employment action. In fact, [D]efendants have no authority or control over [Ross-Paige's] disability, which was shown on the record, and this claim would be correctly asserted against a defendant not in this party, or in this claim.

8

Ross-Paige did not respond to Defendants' objection. The circuit court overruled Defendants' objection and submitted Instruction No. 8 to the jury.

Next, Defendants were required to raise this objection in their motion for new trial. Rule 78.07 governs motions for new trial and provides in part: "Where definite objections or requests were made during the trial in accordance with Rule 78.09, including specific objections to instructions, a general statement in the motion of any allegations of error based thereon is sufficient." Defendants filed a motion for new trial in which they claimed Instruction No. 8 misstated Missouri law about retaliation and constituted a roving commission. In their contemporaneously filed memorandum in support of their motion for new trial, Defendants extensively discussed its objection to Instruction No. 8, including that it constituted a roving commission and identified additional non-actionable conduct that was not retaliatory in nature. Defendants maintained there was no evidence supporting the proposition they refused or delayed making disability payments. Defendants argued that, by including this allegation, Instruction No. 8 allowed the jury to return a verdict against Defendants based on the acts of a non-party. Defendants explained, "Ross-Paige requested damages because she had not yet been approved for long-term disability for the rest of her life, i.e. permanent disability." Defendants then outlined unrefuted trial testimony that the Board and police retirement system were separate and distinct entities, and that the Board had no role in determining Ross-Paige's eligibility for a disability pension.

Ross-Paige maintains that raising a specific issue in the memorandum in support of a motion for new trial is insufficient to preserve the issue for review, citing *Greco v.*

9

*Robinson*, 747 S.W.2d 730 (Mo. App. E.D. 1988). *Greco* is inapposite in that the parties there attempted to file suggestions in support of their motion for new trial raising new claims and attaching new affidavits to support those claims after the time for filing had expired. The court initially explained, "A party may not add a new point to a motion for new trial under the guise of making 'Suggestions.'" *Greco*, 747 S.W2d at 734. However, "[a] motion for new trial may not be amended to add a new point after the expiration of the time provided by court rule … any amendment filed out of time becomes a nullity." *Id*. Here, Defendants filed a timely motion for new trial and contemporaneously filed suggestions in support of its motion for new trial.

Ross-Paige filed suggestions in opposition in response to Defendants' motion and memorandum in support of a new trial. Ross-Paige cited all of the same testimony Defendants set forth to support their claim. Ross-Paige's suggestions argued that a reasonable jury could find the Board and the police retirement system were "one in the same and/or work together to determine the status of applicants" or that the Board had a hand in delaying Ross-Paige's disability pension application. Taken together, the issue concerning the submissibility of Ross-Paige's disability claim was fleshed out fully by the parties in their pleadings presented to the circuit court.

Ross-Paige also argues Defendants' objection has changed throughout the course of the litigation. First, Ross-Paige maintains Defendants' objection at trial was that the Board could not be held liable as a matter of law, rather than that Ross-Paige failed to prove "both sides of the disjunctive," which Ross-Paige believes was first articulated in Defendants' memorandum in support of its motion for new trial. This assertion is

10

incorrect. Defendants stated at the instruction conference that there was no evidence to support Ross-Paige's disability claim, it was not a tangible employment action, and the Board could not be held liable for this action because it had no authority or control over Ross-Paige's disability pension claim. Defendants have preserved these arguments throughout the litigation and can raise them on appeal.

The record supports a finding that the circuit court was apprised fully of the arguments presented below concerning the appropriateness of submitting the disability claim prior to issuing its ruling. *See State v. Ess*, 453 S.W.3d 196, 201 n.4 (Mo. banc 2015). Accordingly, this Court is not convicting the circuit court of error it could not remedy, nor is it granting Defendants relief on claims different from those presented to the circuit court. *Id*. Defendants' claim is preserved for appellate review.

***Standard of Review***

Whether a jury was instructed properly is a question of law that this Court reviews *de novo*. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 376 (Mo. banc 2014). This Court views the evidence in the light most favorable to submission of the instruction. *Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 880 (Mo. banc 2015). "The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." *Hervey v. Missouri Dep't of Corrections*, 379 S.W.3d 156, 159 (Mo. banc 2012).

Jury Instruction No. 8 is a disjunctive verdict-directing instruction. "In order for disjunctive verdict directing instructions to be deemed appropriate, each alternative must

11

be supported by substantial evidence." *Herrington v. Medevac Med. Response, Inc.*, 438 S.W.3d 417, 422 (Mo. App. W.D. 2014). "Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case." *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010) (quoting *Powderly v. S. County Anesthesia Assocs. Ltd.*, 245 S.W.3d 267, 276 (Mo. App. E.D. 2008)). This Court must consider the evidence in the light most favorable to Ross-Paige and disregard Defendants' evidence unless it tends to support the instruction's submission. *Black & Veatch Corp. v. Wellington Syndicate*, 302 S.W.3d 114, 130 (Mo. App. W.D. 2009).

## *The Police Retirement System and the Board*

Defendants argue that Instruction No. 8 was not supported by substantial evidence, and the Board could not refuse or delay Ross-Paige's disability pension claim as a matter of law. A brief overview of the duties and responsibilities of the police retirement system and the Board are instructive in analyzing Defendants' challenges to Instruction No. 8.

The police retirement system is a statutorily created entity, established in 1929, providing for "an administrative tribunal and certain prerequisites to action by it." *State ex rel. Lambert v. Flynn*, 154 S.W.2d 52, 54-57 (Mo. banc 1941). Section 86.037 states the police retirement system's board of trustees "has exclusive original jurisdiction in all matters related to or affecting the funds herein provided for, including, in addition to all other matters, all claims for … pensions under this law …." This statute vests the police retirement system with "exclusive original jurisdiction over all claims arising under the act." *State ex rel. Police Retirement Sys. of City of St. Louis v. Murphy*, 224 S.W.2d 68, 70 (Mo. banc 1949). This statute also confers upon the police retirement system the

12

exclusive power to make factual determinations regarding whether a police officer is entitled to pension benefits. *State ex rel. Cook v. Glassco*, 161 S.W.2d 438, 440 (Mo. App. St. L. Dist. 1942).

By contrast, the Board is "a separate body in charge of the police force …." *Lambert*, 154 S.W.2d at 54. "[T]he power to initiate proceedings for the allowance of accidental disability benefits, by making application to the [police retirement system] is vested in any member of the [B]oard …." *Cook*, 161 S.W.2d at 440. However, "this does not mean that such member [of the Board] has power to determine the facts upon which the allowance of benefits depends." *Id*. Rather, the Board's duty to submit an application to the police retirement system is ministerial, which serves only to initiate the proceeding for the applicant. *State ex rel. Eagleton v. Hughes*, 194 S.W.2d 307, 313 (Mo. banc 1946); *State ex rel. Kilker v. Huffman*, 187 S.W.2d 850, 854 (Mo. App. St. L. Dist. 1945).

### *Instruction No. 8 Not Supported by Substantial Evidence*

Upon reviewing the evidence in the light most favorable to Ross-Paige, this Court holds Instruction No. 8's disjunctive submission that Defendants "unjustly refused or delayed [Ross-Paige's] disability claim" was not supported by substantial evidence. A careful review of the record demonstrates Ross-Paige presented evidence only about disability pension benefits, not long-term disability. Ross-Paige testified that after she was dropped from the officer rolls, she applied for "disability" due to her injury. Ross-Paige testified about the treatment and various medical evaluations she underwent to determine whether she was disabled. Ross-Paige stated it was determined her injuries

13

were permanent, and there was no additional treatment that would enable her to return to being a police officer. Ross-Paige then offered several exhibits into evidence, including the medical records and the doctor's letter outlining her permanent disability, which were submitted and addressed to the police retirement system. Ross-Paige testified that she would receive "disability" from "the department" for the remainder of her life, totaling approximately seventy-five percent of her income. Ross-Paige attended a hearing regarding entitlement to "disability benefits" in May 2013. As of the date of trial in March 2014, Ross-Paige had not yet received a decision and testified that she had not received "a single cent in disability from this department."

During a recess in Defendants' case, the attorneys made a record attempting to clarify Ross-Paige's disability claim. Defendants stated that Ross-Paige received disability payments, referred to as long-term disability and that lasted twenty-four months, from the Board for the entirety of 2013. Defendants explained that the disability Ross-Paige referred to during her testimony was a disability pension, payable for the remainder of her life through the police retirement system. Ross-Paige's counsel responded, "I think they're one and the same …." Defendants disagreed, stating that the disability pension payable for the rest of Ross-Paige's lifetime is not payable by the Board; rather, it is payable by the police retirement system, which was not a defendant in this case. Ross-Paige's counsel replied the jury could draw its own conclusions on what retaliation took place. However, Defendants argued that it was misleading to the jury and prejudicial to Defendants because it gave the jury the impression that one of the defendants in this case had not paid Ross-Paige, which was incorrect because the police

retirement system was not a defendant here. Further, Defendants argued it was prejudicial to allow the jury to believe Ross-Paige had not received payments from the Board for long-term disability when, in fact, she had. Ross-Paige's counsel replied, "That is not her allegation," but agreed she wished to argue the inference that there was a "ripple effect" concerning the delay of her disability pension. Defendants informed the circuit court it had a witness available to testify about the differences between the two disability claims, but asked Ross-Paige if she would stipulate as to the payments she received to avoid producing that witness. Ross-Paige declined.

Defendants then offered the testimony of Monica Green (hereinafter, "Green"), a SLMPD human resources manager, who was responsible for all benefit programs administered by SLMPD, except for the pension plans. Green testified that an insurance company pays out long-term disability on behalf of the Board. There is a six-month qualifying period before payments begin after an employee is injured. Long-term disability is paid for twenty-four months, unless it is determined an employee cannot perform any job, then it is paid until the employee reaches age sixty-five. Green produced a document prepared by the insurance company that disburses payments for long-term disability on the Board's behalf. This document showed Ross-Paige received approximately $20,000 in long-term disability payments during 2013. Ross-Paige did not cross-examine Green about the document's authenticity or accuracy and did not object when the document was entered into evidence.

Green explained that long-term disability is different from a disability pension. A disability pension entails injured officers collecting seventy-five percent of their income

15

for the rest of their lives, provided the disability is determined to be work-related. The disability pension is paid through the police retirement system. Green testified that the Board and the police retirement system were two separate entities. Green explained that the form Ross-Paige testified about filling out was for the disability pension. When asked about whether Ross-Paige's disability pension claim had not been ruled on for an extended period of time, Green replied that she did not know the status of Ross-Paige's claim.

When reading Ross-Paige's testimony in context, while generally referring to her claim as "disability," Ross-Paige discussed her application submitted to the police retirement system, the medical evaluations to determine whether she was disabled, and stated she attended a hearing but had not received a decision. Ross-Paige did not meaningfully impeach Green's testimony. Further, Ross-Paige did not object to the exhibit showing she received over $20,000 in long-term disability payments from the Board. Therefore, there can be no dispute that when Ross-Paige testified about not receiving a "single cent of disability," she was referring to her disability pension.

Despite this testimony, Ross-Paige now argues on appeal that she presented substantial evidence that the Board delayed and refused to pay her long-term disability benefits. This contrasts with Ross-Paige's counsel's argument at trial that "it was not her allegation" that the Board failed to pay disability pension benefits. This also differs from Ross-Paige's response to Defendants' motion for new trial that Instruction No. 8 referred to "her application for disability to the [police retirement system]" and a reasonable jury could find the Board and the police retirement system were "one in the same and/or work

16

together to determine the status of applicants" or that the Board had a hand in delaying Ross-Paige's disability pension application. Parties on appeal generally "must stand or fall" by the theories upon which they tried and submitted their case in the circuit court below. *Kleim v. Sansone*, 248 S.W.3d 599, 602 (Mo. banc 2008). This includes s respondent defending a challenge to instructional errors raised by an appellant. *See Porta-Fab Corp. v. Young Sales Corp.*, 943 S.W.2d 686, 690 (Mo. App. E.D. 1997) (holding respondent was bound by theory presented at trial concerning instruction that deviated from the MAI). Not only is Ross-Paige's assertion not supported by the record, she also is bound by the theories she asserted at the trial court to support submission of Instruction No. 8.

Further, Ross-Paige faults the Board for not clarifying for the jury during closing argument the distinction between the disability claims at issue. As the plaintiff bearing the burden of proof at trial, it was incumbent upon Ross-Paige to present substantial evidence to support her claims as submitted in Instruction No. 8. Yet Ross-Paige failed to clarify this issue for the jury, despite telling the circuit court she planned to make this argument in response to Green's testimony. During closing argument, Ross-Paige's counsel stated, "I won't go through the litany of specific reasons that are listed out" in Instruction No. 8. Ross-Paige's counsel further argued that if the jury believed "that there was one single retaliatory act, even if it's a different act … you check the box, and you move on."

Next, Ross-Paige argues the jury was free to believe all, some or none of Green's testimony, and, therefore, Instruction No. 8 was supported by substantial evidence.

17

However, when reviewing Ross-Paige's testimony in context, she was testifying about her disability pension, while Green's testimony concerned the long-term disability payable by the Board. The witnesses were not testifying about the same "disability" payments. Further, Green's unrefuted testimony was that the Board initiated Ross-Paige's claim for disability pension benefits, which was the only action it could take with respect to that claim. *Eagleton*, 194 S.W.2d at 313. There was no testimony presented that Green, acting on behalf of the Board, delayed initiating Ross-Paige's claim. Ross-Paige also failed to present this argument to the jury.

Instruction No. 8 is also erroneous as a matter of law because the Board had no legal authority to refuse Ross-Paige's claim. The police retirement system, which was a separate entity and not a party to this litigation, was vested with exclusive authority to make this determination. Section 86.037. Moreover, there was no evidence to support Ross-Paige's post-trial assertions that the jury could have found the Board and the police retirement system were "one in the same and/or work together to determine the status of applicants." Ross-Paige failed to cross-examine Green about this theory, failed to argue this inference to the jury, and abandoned this theory on appeal.

*Prejudice*

Having demonstrated Instruction No. 8 confused the facts regarding which disability claim Ross-Paige referenced and misdirected the jury about the Board's legal authority to refuse Ross-Paige's disability pension application, Defendants also proved prejudice resulted from Instruction No. 8's submission. The jury found Defendants liable only under Instruction No. 8. While it is clear the jury found in Ross-Paige's favor on at

18

least one of the disjunctive theories submitted in Instruction No. 8, there is no way of discerning which theory the jury chose. Consequently, this Court cannot rule out the possibility that the jury improperly returned its verdict upon a theory that was not supported by substantial evidence and that misdirected or confused the jury. The circuit court committed reversible error in submitting Instruction No. 8 to the jury.

## Conclusion

Because this Court holds the circuit court committed instructional error, this Court need not address Defendants' second point regarding juror misconduct. The circuit court's judgment is reversed, and the cause is remanded.

_____
GEORGE W. DRAPER III, JUDGE

All concur.