

# SUPREME COURT OF MISSOURI
## en banc

SHEREEN KADER,     )   *Opinion issued January 15, 2019*
             )
     Respondent,  )
             )
v.             )   No. SC97069
             )
BOARD OF REGENTS OF   )
HARRIS-STOWE STATE    )
UNIVERSITY,       )
             )
     Appellant.   )

**APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**The Honorable Mark H. Neill, Circuit Judge**

The board of regents of Harris-Stowe State University appeals the circuit court's judgment following a jury verdict. The jury found Harris-Stowe liable on Dr. Shereen Kader's claims of national origin discrimination and retaliation under the Missouri Human Rights Act after Harris-Stowe declined to renew Dr. Kader's teaching contract. The jury awarded Dr. Kader $750,000 in actual damages and $1.75 million in punitive damages. On appeal, Harris-Stowe claims the circuit court improperly instructed the jury on Dr. Kader's claims of national origin discrimination and retaliation. Because the circuit court's jury instructions were erroneous and prejudicial, the judgment is reversed and the case remanded for a new trial.

**Factual and Procedural History**

Dr. Shereen Kader, Ph.D., came to the United States in 1999 to pursue graduate education. Dr. Kader is an Egyptian national with prior teaching experience in her home country. Dr. Kader received her master's degree in literacy from Indiana University and her Ph.D. in early childhood education, creativity, and innovation from Pennsylvania State University. Dr. Kader accepted a faculty position at Harris-Stowe shortly before completing her doctorate in 2007. Harris-Stowe promoted her to assistant professor upon receiving her degree. Thereafter, Harris-Stowe renewed Dr. Kader's teaching contract annually from 2007 to 2009.

In 2009, Harris-Stowe promoted Dr. LaTisha Smith to dean of the college of education, making her Dr. Kader's supervisor. Dean Smith evaluated Dr. Kader's teaching performance in October 2009. The faculty evaluation contains 16 categories, each of which are rated on a scale of 1 (unsatisfactory) to 5 (outstanding). Dean Smith gave Dr. Kader ratings of 5 in 12 categories and 4 (excellent) in the remaining categories. Dr. Kader gave herself a rating of 5 in all 16 categories. Dean Smith testified she based Dr. Kader's slightly reduced marks on written and verbal complaints from students about Dr. Kader's teaching. Dr. Kader testified she believed she received lower ratings because of her race, religion, and national origin. Dr. Kader lodged a complaint of discrimination with Harris-Stowe. Harris-Stowe arranged for Dr. Kader and Dean Smith to meet with the human resources department to discuss Dr. Kader's concerns, but Harris-Stowe cancelled the meeting after Dr. Kader informed Harris-Stowe she would be bringing an attorney with

2

her to the meeting. Dr. Kader testified Dean Smith told her bringing an attorney to the meeting could cause her to "face visa complications."

Dr. Kader was authorized to reside and work in the United States during her time at Harris-Stowe pursuant to a J-1 visa, a non-immigrant visa for individuals approved to participate in work- and study-based exchange visitor programs. J-1 visas require an employer sponsor. Harris-Stowe supplied information necessary to maintain Dr. Kader's visa while she was on the faculty, but Penn State officially sponsored her visa from 2007 until it expired in 2010. When she joined the faculty, Harris-Stowe indicated it would assist Dr. Kader with obtaining a new visa after her J-1 visa expired. Exchange visitors in the United States on J-1 visas usually return to their home countries for at least two years after their J-1 visas expire. Visitors then apply for a new visa when they wish to return to the United States. Dr. Kader, however, did not wish to return to Egypt for any period of time, so she filed for a waiver of the two-year waiting period to obtain an H1-B visa so she could continue teaching at Harris-Stowe. Dr. Kader did not receive the waiver before her J-1 visa expired June 13, 2010. After June 13, Dr. Kader no longer had J-1 status, and she was required to depart the United States during a 30-day grace period unless she secured another visa.

While waiting to learn if she would receive a waiver of the two-year waiting period and obtain an H1-B visa, Dr. Kader also applied for an O-1 "extraordinary person" visa in a final effort to maintain work authorization. Dr. Kader, through her immigration attorney, requested Harris-Stowe provide documentation to supplement her application, and Harris-Stowe complied. After several weeks without hearing whether her O-1 visa was

granted, Dr. Kader contacted the agency responsible for processing the visa application. The agency told Dr. Kader it had requested additional information and supporting documentation from Harris-Stowe and received no response. On June 11, 2010, two days before her J-1 visa was set to expire, Dr. Kader contacted Harris-Stowe about her O-1 visa application and the agency's request for additional information and supporting documentation. Harris-Stowe denied receiving any such request. The O-1 visa application was subsequently denied, and Harris-Stowe did not appeal. Because she lacked a valid visa, Harris-Stowe notified Dr. Kader her teaching contract for the 2010-11 academic year would not be renewed, and Harris-Stowe began seeking another individual to fill her position.

Dr. Kader sued Harris-Stowe under the Missouri Human Rights Act (MHRA),[1] alleging discrimination based on race and national origin. She also sued for retaliation. The case proceeded to trial, and the jury returned a verdict in Harris-Stowe's favor on the race discrimination claim, but in Dr. Kader's favor on her retaliation and national origin discrimination claims, awarding $750,000 in actual damages and $1.75 million in punitive damages. The circuit court entered judgment on the jury's verdict.[2] Harris-Stowe appeals, arguing the circuit court's jury instructions were erroneous and prejudicial.[3] Among the

---

[1] Chapter 213, RSMo 2016. Statutory references, including references to chapter 213, are to to RSMo 2016. Chapter 213 was amended, effective August 28, 2017. Dr. Kader's suit was filed in 2013 and went to trial in December 2015, so the case is governed by the statute prior to the 2017 amendments.

[2] Dr. Kader did not appeal the circuit court's judgment entered in favor of Harris-Stowe on the race discrimination claim.

[3] This Court granted transfer of this case following an opinion by the court of appeals pursuant to Rule 83.04.

circuit court's jury instructions were two disjunctive jury instructions, instruction Nos. 8 and 9, which are the subject of this appeal.

## Standard of Review

"Whether a jury was instructed properly is a question of law that this Court reviews *de novo*." *Ross-Paige v. St. Louis Metro. Police Dep't*, 492 S.W.3d 164, 172 (Mo. banc 2016). Instructional error requires reversal only if the error resulted in prejudice materially affecting the merits of the case. *Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 159 (Mo. banc 2012). "This Court views the evidence in the light most favorable to submission of the instruction." *Ross-Paige*, 492 S.W.3d at 172. "The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." *Id.*

## Analysis

In its dispositive point on appeal, Harris-Stowe argues the circuit court's disjunctive jury instructions 8 and 9 misled and confused the jury, thereby resulting in prejudice. Harris-Stowe contends the instructions permitted the jury to find Harris-Stowe liable for conduct that is not actionable under the MHRA, resulting in prejudice. This Court agrees. Because the evidence presented at trial does not establish Harris-Stowe violated the MHRA when it did not appeal the denial of Dr. Kader's O-1 visa application, the circuit court's jury instructions were erroneous and prejudicial.

### A. National Origin Discrimination

Harris-Stowe argues the circuit court erred by including at least one alternative in the disjunctive national origin discrimination instruction that did not constitute actionable

5

conduct under the MHRA. The MHRA prohibits discrimination in the workplace. *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo. banc 2011). "The MHRA protects important societal interests by prohibiting **unlawful employment practices** on the basis of race, color, religion, national origin, sex, ancestry, age, or disability." *Id.* (emphasis added).

"[F]or disjunctive verdict directing instructions to be deemed appropriate, each alternative must be supported by substantial evidence." *Ross-Paige*, 492 S.W.3d at 172. A disjunctive instruction is prejudicial when substantial evidence does not support each disjunctive alternative because "there is no way of discerning which theory the jury chose." *Id*. at 176.

Jury instruction No. 8 was the verdict director submitted to the jury for Dr. Kader's national origin discrimination claim. The instruction stated:

> Your verdict must be for Plaintiff on Plaintiff's national origin discrimination claim if you believe:
>
> First, either:
>
>> Defendant did not respond to the USCIS request for evidence to support the O-1 Visa Petition; **or**
>> **Defendant did not appeal the denial of the O-1 Visa Petition**; **or**
>> Defendant did not renew Plaintiff's employment contract; **or**
>> Defendant denied Plaintiff a work leave of absence; and
>
> Second, Plaintiff's national origin was a contributing factor in Defendant's conduct in any one or more of the respects submitted in paragraph First, and
>
> Third, such conduct directly caused or directly contributed to cause damage to Plaintiff.

6

(Emphasis added). Accordingly, substantial evidence must have been presented at trial showing Harris-Stowe's failure to appeal the denial of Dr. Kader's O-1 visa application was an "unlawful employment practice" under the MHRA.[4]

Section 213.055 defines unlawful employment practices. It provides, in pertinent part:

It shall be an unlawful employment practice . . . For an employer . . .

(a) To fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to [her] compensation, **terms, conditions, or privileges of employment**, because of such individual's … national origin … ; [or]

(b) To … **otherwise adversely affect [her] status as an employee**, because of such individual's … national origin ….

§ 213.055.1(1)(a)-(b) (emphasis added). Dr. Kader argues seeking an appeal of her O-1 visa denial was a privilege of her employment with Harris-Stowe under § 213.055.1(1)(a). "Privileges of employment" are not defined in the MHRA or the code of state regulations. "In the absence of statutory definitions, the plain and ordinary meaning of a term may be derived from a dictionary, and by considering the context of the entire statute in which it appears." *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 809 (Mo. banc 2017). A privilege is "a right … granted as a peculiar benefit, advantage, or favor." WEBSTER'S THIRD NEW INT'L DICT. 1805 (2002). Dr. Kader alleges Harris-Stowe denied her a

---

[4] This Court limits its holding to the second disjunctive option concerning Harris-Stowe's failure to appeal the denial of Dr. Kader's O-1 visa application. This Court does not address the validity or invalidity of the other disjunctive options.

"peculiar benefit, advantage, or favor" of her employment when Harris-Stowe did not appeal her visa denial.

What constitutes a privilege of employment necessarily varies depending on where the person is employed and what is considered a privilege, term or condition of that employment. While appealing the denial of a visa application for a foreign teacher could be a privilege of employment at some institutions, there was no evidence Harris-Stowe specifically agreed to seek an appeal of an O-1 visa denial on Dr. Kader's behalf. There was no evidence it was Harris-Stowe's practice to appeal O-1 visa denials for employees nor that it appealed O-1 visa denials for some employees but not for Dr. Kader.

Furthermore, while Dr. Kader also argues Harris-Stowe's failure to seek an appeal of her O-1 visa denial "adversely affected [her] status as an employee" in violation of § 213.055.1(1)(b), her argument is misplaced in that it assumes she was eligible for the O-1 visa and would have received the extraordinary person visa had Harris-Stowe appealed its denial. The O-1 "extraordinary person" visa is reserved for aliens who possess "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim …, and whose achievements have been recognized in the field through extensive documentation." 8 U.S.C. § 1101(a)(15)(O)(i) (2010). "Extraordinary ability means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2) (2010). "The 'extraordinary ability' designation is thus 'extremely restrictive' by design." *Visinscaia v. Beers*, 4 F. Supp. 3d 126, 131 (D.D.C. 2013). Indeed, federal courts have upheld the denial of extraordinary person visas to

8

remarkable individuals and overturned denial only in the rarest of circumstances. *Compare*

*Kazarian v. U.S. Citizenship and Immigration Servs.*, 596 F.3d 1115, 1122 (9th Cir. 2010)

(affirming denial of theoretical physicist's application who solved 20-year old physics

problem) *with Muni v. I.N.S.*, 891 F. Supp 440, 445 (N.D. Ill. 1995) (overturning denial of

professional hockey player's application who played on the NHL's best team for several

years, won three Stanley Cups, earned a salary significantly higher than the average player,

and was widely regarded as one of the league's best defenders). To qualify for the O-1

extraordinary person visa, an applicant must present "documentation of either (1) a

one-time achievement (that is, a major, international [sic] recognized award); or (2) at least

three of the ten types of lesser achievements enumerated in the regulations." *Visinscaia*, 4

F. Supp. 3d at 131 (internal quotations and citation omitted).[5]

Dr. Kader was just beginning her professional career. Although she gained teaching

experience in Egypt before coming to the United States, there was no evidence presented

at trial Dr. Kader had become a preeminent expert in her field. Dr. Kader's immigration

attorney did not provide documentation, and the evidence presented at trial does not show,

Dr. Kader had received a major internationally recognized award or that she had

accomplished at least three of the "lesser" achievements. To be sure, this Court does not

---

[5] Although labeled "lesser" achievements, they are by no means insignificant. Such achievements include: receipt of lesser nationally or internationally recognized prizes; membership in an association requiring outstanding achievements of its members; publications in a major trade publication or major media; participation as a judge of others' work in the alien's field; authorship of scholarly articles; display of work at exhibitions or showcases; performing a leading or critical role for distinguished organizations; commanding a high salary; and commercial success in performing arts. 8 C.F.R. § 204.5(h)(3)(i)-(x) (2010).

wish to diminish the significance of Dr. Kader's academic achievements, but the evidence presented at trial does not show Dr. Kader is "one of that small percentage who have risen to the very top" of her field. 8 C.F.R. § 204.5(h)(2).

Dr. Kader may have preferred Harris-Stowe seek an appeal of her denied O-1 visa application, but the failure to act on such an appeal does not automatically constitute an unlawful employment practice. *See Cunningham v. Kansas City Star Co.*, 995 F. Supp 1010, 1025 (W.D. Mo. 1998) (applying the MHRA). Rather, the "action must have had some **adverse impact**" on the plaintiff before it becomes actionable. *Id.* (emphasis added). The evidence presented at trial did not provide a basis for the jury to find the failure to appeal the denied O-1 visa prevented Dr. Kader from obtaining an O-1 visa. Rather, Dr. Kader's ineligibility for the visa prevented her from receiving it. Therefore, the failure to pursue the appeal did not have an impact on Dr. Kader's employment status.

Accordingly, the failure to appeal the denied O-1 visa application was not an unlawful employment practice under the MHRA. The circuit court, therefore, erred by including in instruction 8 a disjunctive alternative concerning Harris-Stowe's failure to seek an appeal of Dr. Kader's denied O-1 visa application in its national origin discrimination instruction because the evidence presented at trial failed to establish that either appealing the denial of the visa application was a privilege of Dr. Kader's employment with Harris-Stowe or failing to seek an appeal of the denial otherwise adversely affected her status as an employee.

10

**B. Retaliation**

Harris-Stowe also argues the circuit court's disjunctive jury instruction on Dr. Kader's retaliation claim was erroneous and prejudicial because at least one option did not constitute actionable retaliation under the MHRA. Jury instruction No. 9 was the verdict director submitted to the jury for Dr. Kader's retaliation claim. Instruction No. 9 stated:

> Your verdict must be for Plaintiff on Plaintiff's claim for retaliation if you believe:
>
> First, Plaintiff made complaints of discrimination, and
>
> Second, either:
>
> > Defendant did not respond to the USCIS request for evidence to support the O-1 Visa Petition; **or**
> > **Defendant did not appeal the denial of the O-1 Visa Petition**; **or**
> > Defendant did not renew Plaintiff's employment contract; **or**
> > Defendant denied Plaintiff a work leave of absence; **or**
> > Defendant opposed Plaintiff's application for unemployment benefits; and
>
> Third, Plaintiff's complaints of discrimination were a contributing factor in any such actions described in the preceding paragraph Second, and
>
> Fourth, such conduct directly caused or directly contributed to cause damage to Plaintiff.

(Emphasis added). Similar to the instruction on Dr. Kader's national origin discrimination claim, substantial evidence must have been presented at trial based on which the jury could

11

find the failure to appeal the denied O-1 visa prevented Dr. Kader from obtaining an O-1 visa. *Ross-Paige*, 492 S.W.3d at 172.[6]

Dr. Kader argues Harris-Stowe failed to seek an appeal of the denial of her O-1 visa application in retaliation for Dr. Kader alleging she received an unfavorable faculty evaluation because of her race, religion, and national origin. Under the MHRA, it is unlawful "To retaliate … in any manner against any other person because such person has opposed any practice prohibited by this chapter." § 213.070.1(2). Although § 213.070 proscribes retaliation "in any manner," the "manner" in which an employer retaliates must nevertheless have some adverse impact on the plaintiff before it becomes actionable. *McCrainey v. Kansas City Mo.Sch. Dist.,* 337 S.W.3d 746, 753 (Mo. App. 2011) ("To establish a prima facie case of retaliation under the MHRA, a plaintiff must prove … the employer took adverse action against him …."). Otherwise, the language of § 213.070 would create a retaliation claim under the MHRA for any action occurring after an employee lodged a complaint of discrimination – so long as the complaint was found to be a contributing factor to the action – regardless of whether the action adversely effected the employee.

Here, the evidence presented at trial does not provide a basis for finding Harris-Stowe's failure to seek an appeal of the denied O-1 visa application adversely impacted Dr. Kader. As explained above, failing to seek an appeal of the denied application

---

[6] Again, this Court limits its holding to the second disjunctive option, concerning Harris-Stowe's failure to appeal the denial of Dr. Kader's O-1 visa application. This Court does not address the validity or invalidity of the other disjunctive options.

did not have an adverse impact on Dr. Kader because there was no evidence to suggest the appeal had any chance of succeeding. O-1 visas are reserved for "that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). The evidence presented at trial does not show Dr. Kader is a member of this elite class eligible for the O-1 visa, so there was no evidence presented at trial showing the appeal would have been successful. Therefore, the failure to seek and pursue the appeal did not have an adverse impact on Dr. Kader's employment status.

An action is not adverse simply because it is upsetting or disappointing to an employee. *Cunningham*, 995 F. Supp at 1025. Accordingly, the failure to appeal the denied visa application, therefore, was not unlawful retaliation under the MHRA. The circuit court, therefore, erred by including a disjunctive alternative concerning Harris-Stowe's failure to seek an appeal of Dr. Kader's denied visa application in its retaliation instruction because the evidence presented at trial did not establish that failing to appeal Dr. Kader's denied O-1 visa application adversely affected her employment with Harris-Stowe.

## Conclusion

The circuit court's disjunctive verdict directing instructions 8 and 9 were erroneous and prejudicial because they included at least one alternative that did not constitute actionable conduct under the MHRA. The circuit court's judgment is reversed, and the

13

case is remanded for a new trial on Dr. Kader's retaliation and national origin discrimination claims.[7]

_____
W. Brent Powell, Judge

All concur.

_____

[7] Dr. Kader also filed a motion in this Court to order Harris-Stowe to pay her attorney fees and costs on appeal "if the Court affirms the trial court's judgment." The MHRA authorizes a court to "award court costs and reasonable attorney fees to the prevailing party." § 213.111.2. "A prevailing party is one that succeeds on any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit." *Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. its Members*, 364 S.W.3d 615, 631 (Mo. App. 2012). This Court does not affirm the circuit court's judgment, and Dr. Kader is not the prevailing party in this appeal. Accordingly, the motion is overruled.

14