

# Missouri Court of Appeals
## Western District

| | |
|---|---|
| BARBARA VEGA, | ) |
| | ) WD87191 |
| Appellant, | ) |
| v. | ) OPINION FILED: |
| | ) |
| MISSOURI COMMISSION ON | ) April 29, 2025 |
| HUMAN RIGHTS, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Adam L. Caine, Judge**

**Before Division Three: W. Douglas Thomson, Presiding Judge,
Karen King Mitchell, Judge, and Thomas N. Chapman, Judge**

Barbara Vega ("Vega") appeals a judgment of the Circuit Court of Jackson County

that granted a motion to dismiss filed by the Missouri Commission on Human Rights (the

"Commission") in response to Vega's petition that sought damages from the Commission

on her claims alleging that the Commission had engaged in the unlawful discriminatory

practices of aiding/abetting pursuant to section 213.070.1(1)[1] and retaliation pursuant to

---

[1] Unless otherwise indicated, statutory references are to RSMo 2016, as updated through the 2018 cumulative supplement.

section 213.070.1(2). Vega appeals. Because we find that Vega's petition failed to state claims for which relief can be granted, the judgment is affirmed.

## Background

On December 11, 2023, Vega filed a two-count petition that sought damages from the Commission due to the Commission's delay in issuing a right to sue notice on Vega's prior charge of discrimination against her former employer. Count I asserted that the Commission had committed the unlawful discriminatory practice of aiding/abetting pursuant to section 213.070.1(1). Count II asserted that the Commission had engaged in the unlawful discriminatory practice of retaliation pursuant to section 213.070.1(2). The petition alleged that the Commission employs more than six people and is an "employer" within the meaning of the Missouri Human Rights Act ("MHRA") pursuant to section 213.010(8), and that sovereign immunity had been waived by the Commission for the claims asserted in the petition.

Based on the allegations in Vega's petition, which we accept as true for purposes of appellate review in this case, Vega filed a charge of discrimination against her former employer on August 2, 2021, alleging sex discrimination and retaliation. The charge was dually filed with the Commission and the Equal Employment Opportunity Commission ("EEOC"), and was assigned to the Commission pursuant to a work-sharing agreement. According to Vega, for the Commission to receive payment pursuant to this agreement, the Commission had to complete certain requirements, such as either resolving a charge or obtaining a position statement from the respondent named in the complaint.

2

The MHRA places legal requirements on the Commission's exercise of authority, including the requirements that the Commission issue a right to sue notice and that the Commission terminate proceedings on certain complaints at the complainant's request when the Commission has not completed its administrative processing of the complaint within 180 days. *See* § 213.111.1.

Based on Vega's allegations, she requested a right to sue notice on January 31, 2022 – 182 days after filing the charge of discrimination against her former employer. The Commission took the position that it still needed to determine its jurisdiction before it issued a right to sue notice. Vega followed up on February 18, 2022. The Unit Supervisor indicated that the Commission had questions about Vega's employer's name. Vega provided the Commission with filings of the Missouri Secretary of State that identified the employer's name as Vega had pled. An intern with the Commission informed Vega on March 3, 2022, that the Commission had confirmed the employer's legal name to be exactly as pled by Vega. Vega alleged that, despite having contacted the employer, the Commission did nothing for over three months.

Vega alleged that she contacted the Commission again on July 14, 2022. The Unit Supervisor indicated that the Commission would typically try to receive a response from the employer within fifteen to thirty days in order to meet a requirement in the Commission's contract with the EEOC. However, the Unit Supervisor indicated that

Vega was entitled to a right to sue notice pursuant to the recent *Najib*[2] decision. The Unit Supervisor inquired whether Vega preferred the Commission to issue the notice without the response, or whether it would be acceptable for the Commission to reschedule a response date and seek a response. Vega agreed to allow the Commission until August 19, 2022, to issue the right to sue notice.

On August 9, 2022, a Commission investigator contacted Vega indicating that he was trying to locate the employer named in Vega's complaint and asked whether the employer's name was correct. Vega replied that the Commission had confirmed the name months prior, provided the Commission with the same publicly available documentation that had been provided to the Commission previously, and reminded the Commission of the Commission's agreement to issue a right to sue notice by August 19, 2022.

On August 10, 2022, the Unit Supervisor informed Vega that the investigator had been seeking a response from the employer but that the Commission did not know whether the Commission had a proper contact person. The Unit Supervisor indicated that she wanted to connect Vega and the investigator because the Unit Supervisor would be out of the office from August 12, 2022, through September 2, 2022. The Unit Supervisor indicated that the Commission wanted to get the response from the employer and issue the right to sue notice in September, and also indicated that the notice could be issued without the response if necessary.

---

[2] *Najib v. Missouri Comm'n on Human Rights*, 645 S.W.3d 528 (Mo. App. W.D. 2022).

Vega responded that the Commission had confirmed that it had contacted the employer in March of 2022, that the employer's identity had been confirmed to be exactly as identified by Vega, and that the Commission had agreed to issue the right to sue notice on or before August 19, 2022.

The Unit Supervisor responded that, if the Commission were to move forward without having received a response by August 19, 2022, the Commission's normal processing time took several weeks for case write up, review, approval, submission, and closure, such that a right to sue notice could be expected in September.

On September 14, 2022, Commission staff contacted Vega to ask if she was interested in participating in mediation. Vega forwarded the response to the Unit Supervisor to ask why the Commission was not issuing a right to sue letter and was continuing to delay the process. The Unit Supervisor responded that the Commission had conflicting information in its records regarding whether Vega wanted to receive a right to sue notice or wished to participate in mediation in an attempt to settle the case through early resolution. The Unit Supervisor indicated that the Commission was expecting a response from the employer the following day, and that the Commission would issue a right to sue notice as soon as possible.

Vega followed up on September 19, 2022, to ensure that a right to sue notice was being processed. The Unit Supervisor responded that a response had been received and that the Commission was "also expecting a video shortly."

Vega alleged that 180 days had passed and the Commission had received multiple requests for a right to sue notice, such that the Commission had no authority to take any actions aside from terminating proceedings and issuing a right to sue notice. Vega alleged that the Commission nevertheless continued to seek and gather evidence for no apparent reason other than to delay Vega's ability to litigate her claims against her former employer.

A second Commission investigator contacted Vega by phone around September 29, 2022, to inquire whether Vega wanted the Commission to issue a right to sue notice or whether Vega wanted to pursue mediation. Vega informed the Commission yet again that Vega wanted a right to sue notice. On September 30, 2022, the Commission issued Vega a right to sue notice.

On October 18, 2022, Vega filed a charge of discrimination with the Commission and the EEOC that named the Commission as the respondent. Vega alleged that the Commission had engaged in the unlawful discriminatory practices of aiding/abetting and retaliation. A right to sue notice was issued on that charge on September 12, 2023. Vega then filed the petition underlying this appeal.

In her petition, Vega alleged that the Commission's delay prevented her from pursuing her claims for over eight months. Vega also alleged that the Commission lied to her multiple times regarding whether the Commission had been in contact with Vega's former employer, the status of the right to sue notice, and when the Commission would issue a right to sue notice. Vega alleged that she was forced to borrow money and

6

incurred interest on the loans, and that she was forced to deal with a traumatic life event for nearly a year longer than she would have absent the Commission's actions. Vega alleged that employers alleged to have committed unlawful discriminatory practices benefit from delays by the Commission and that the Commission's action of wrongfully withholding a right to sue notice aids employers in their acts of discrimination.

On her claim for aiding/abetting (Count I), Vega alleged that the Commission offered affirmative aid and encouragement to the perpetrators of adverse actions against her by refusing to follow statutory requirements, by providing financial and logistical assistance to her former employer in avoiding answering for adverse actions, by lying to Vega about the status of her claims, by pressuring Vega to pursue mediation after Vega had requested a right to sue notice, and by delaying Vega's pursuit of justice for her claims. Vega alleged that the Commission's conduct was intentionally harmful to Vega and done without just cause. Vega alleged that she suffered irreparable injury as a direct and proximate result of the Commission's conduct, including past and future pecuniary issues, undue delay, increased legal fees, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

On her claim for retaliation (Count II), Vega alleged that she engaged in protected activity by filing a charge of discrimination against her former employer. Vega alleged that the Commission subjected Vega to adverse actions by delaying the issuance of a right to sue notice, by lying about the status of Vega's claims, and by pressuring Vega to mediate her claims after she had repeatedly requested a right to sue notice. Vega alleged

7

that her filing a charge of discrimination against her former employer was the motivating factor in the Commission's actions, such that the Commission's actions were acts of retaliation. Vega alleged damages similar to those asserted in Count I.

The Commission filed a motion to dismiss Vega's petition that asserted that Vega's claims were barred by sovereign immunity. Vega filed suggestions in opposition to the motion to dismiss that asserted that the General Assembly had waived sovereign immunity for claims under the MHRA because the Commission was an "employer" under the MHRA pursuant to section 213.010(8) and because the General Assembly created a private cause of action for the unlawful discriminatory practices alleged in her petition.

The Commission filed reply suggestions in which it argued that the Commission was entitled to sovereign immunity. The Commission recognized that the General Assembly had expressly waived sovereign immunity for MHRA cases involving state employees, but asserted that the General Assembly had never waived sovereign immunity for claims filed by non-employees, and that the General Assembly had never waived sovereign immunity for persons dissatisfied with the Commission's processing of charges of discrimination. The Commission made additional arguments for the first time in its reply. The Commission argued that Vega's petition failed to state claims under section 213.070 because she did not have an employer-employee relationship with the Commission. The Commission argued that the Commission's delay did not qualify as a tangible action that would support a claim for aiding/abetting. The Commission also argued that Vega's petition failed to state a claim for retaliation because Vega had not

8

sufficiently alleged facts that would constitute an adverse action taken by the Commission.

Noting that the Commission's reply made arguments that had not previously been presented, Vega moved for the court to strike the Commission's reply, or, alternatively, to grant Vega leave to file a sur-reply to address the Commission's new arguments. The trial court denied the motion to strike and granted Vega leave to file a sur-reply. Vega's sur-reply included arguments that addressed the requirements necessary to support her claims of aiding/abetting and retaliation, and detailed her position regarding her assertion that her petition included allegations that could, if proven, support her claims of aiding/abetting and retaliation.[3]

Following a hearing on the motion to dismiss, the trial court entered a judgment that granted the motion to dismiss and dismissed the matter with prejudice. The trial court found that Vega's claims failed as a matter of law due to the lack of an employment relationship between Vega and the Commission. The trial court also found that the Commission was entitled to sovereign immunity. The trial court found that it was clear

---

[3] At oral argument, Vega's counsel was asked about the propriety of the trial court ruling on arguments first advanced in the Commission's reply brief. Vega's counsel indicated that the trial court's denial of the motion to strike and the grant of leave to file a sur-reply allowed Vega to be heard on the issues raised in the Commission's reply brief such that the issues raised therein were before the trial court in considering whether to grant the Commission's motion to dismiss. Vega's counsel also agreed that whether the Commission's conduct (as alleged) could support a claim for aiding/abetting or retaliation were issues that were before the trial court in deciding the motion to dismiss such that the trial court "could have" decided the motion to dismiss on the basis that the Commission's conduct did not amount to aiding/abetting or retaliation if the trial court had concluded as such.

that the General Assembly had waived sovereign immunity for MHRA claims arising out of an employment relationship, but found that the General Assembly had not intended to waive sovereign immunity for the claims asserted by Vega. The trial court noted that persons aggrieved by final decisions, findings, rules, and orders of the Commission may receive judicial review and that therefore the Commission was entitled to sovereign immunity for Vega's claims. The trial court also found that Vega's petition failed to state claims upon which relief can be granted because Vega failed to adequately plead facts, rather than conclusions, that sovereign immunity had been waived for Vega's claims.

Vega now appeals to this court.

## Standard of Review

We review the trial court's grant of a motion to dismiss *de novo*. *Matthews v. Harley-Davidson*, 685 S.W.3d 360, 365 (Mo. banc 2024). "A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition." *Id.* at 366 (citation omitted). "When considering whether a petition fails to state a claim on which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Id.* (citation omitted). We review the petition "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.* (citation omitted). We will affirm if dismissal is justified on any ground raised in the motion to dismiss "regardless of whether the trial

10

court relied on that ground." *Avery Contracting, LLC v. Niehaus*, 492 S.W.3d 159, 162 (Mo. banc 2016).

## Analysis

Vega raises three points on appeal. In her first point, Vega contends that the trial court erred in dismissing her claims because claims brought under section 213.070.1(1)-(2) do not carry an unwritten requirement that an employment relationship exists between plaintiff and defendant, and that, therefore, she sufficiently pled claims under section 213.070.1(1) and section 213.070.1(2). In her second point, Vega argues that the trial court erred in finding the Commission was entitled to sovereign immunity because the General Assembly waived sovereign immunity for claims against an "employer" under the MHRA. In her third point, Vega argues that she sufficiently pled that sovereign immunity had been waived.

In this matter, we have concluded that the trial court correctly dismissed Vega's claims. We conclude that Vega has failed to state actionable claims of aiding/abetting and retaliation. However, this conclusion is not based on the doctrine of sovereign immunity, the pleading requirements related to sovereign immunity, or the absence of an employment relationship between Vega and the Commission (issues we do not address).[4]

---

[4] Because we have determined that Vega failed to state actionable claims against the Commission for reasons other than those relied on by the trial court, it is unnecessary to address (and we do not address) whether the trial court erred in determining that sovereign immunity barred Vega's claims, whether the trial court erred in determining that Vega failed to sufficiently plead an exception to sovereign immunity, and whether the trial court erred in determining that claims brought under section 213.070.1 require an employment relationship.

11

Instead, as explained more fully below, our conclusion is based on Vega's failure to state claims for which relief can be granted pursuant to section 213.070.1(1)-(2). Before addressing whether Vega's petition stated a claim for which relief can be granted on her claims for aiding/abetting and retaliation, we first provide some relevant background information regarding the MHRA.

The MHRA prohibits particular discriminatory practices. *See, e.g.*, §§ 213.040, 213.055, 213.065, 213.070. The Commission is an agency created by the General Assembly and tasked with certain powers and duties including the power to seek to eliminate and prevent discrimination based on certain classifications. §§ 213.020.1-2, 213.030. Generally, a person claiming to be aggrieved by an unlawful discriminatory practice under the MHRA may file a complaint with the Commission pursuant to section 213.075. For certain unlawful discriminatory practices, where the Commission has not completed its administrative processing of the complaint within 180 days, and where the complainant has requested in writing, the Commission must issue to the complainant a right to sue notice, which is "a letter indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the complaint." § 213.111.1; *see also Najib v. Missouri Comm'n on Human Rights*, 645 S.W.3d 528, 545 (Mo. App. W.D. 2022). Such a civil action may then be brought as provided in section 213.111.1. Upon issuance of the notice, the Commission must terminate its proceedings relating to the complaint. § 213.111.1. The obvious purpose of the private enforcement action created by the General Assembly in section 213.111.1 is to allow a complainant an

12

alternative means to seek relief from the unlawful practices prohibited by the MHRA –

*i.e.*, to allow the complainant to elect to forego the administrative remedies available

through the Commission and to pursue a privately enforceable avenue to a remedy for the

unlawful practices alleged where the Commission has not completed its administrative

processing of the complaint in 180 days.  *See Najib*, 645 S.W.3d at 540-41, 547.

**Aiding/Abetting**

Whether Vega's petition stated a claim for aiding/abetting depends on whether

Vega sufficiently pled facts that meet the elements of such a claim.  *See Matthews*, 685

S.W.3d at 366.

It is an unlawful discriminatory practice for an employer, employment agency,

labor organization, or place of public accommodation to "aid, abet, incite, compel, or

coerce the commission of acts prohibited under [Chapter 213, RSMo] or to attempt to do

so[.]"  § 213.070.1(1).  Section 213.010(8) provides a definition for "employer" when

that term is used in Chapter 213, RSMo.  It provides that "employer" "shall include the

state, or any political or civil subdivision thereof" or any person employing six or more

persons within the state, subject to certain exclusions.  *See* § 213.010(8).

In *Matthews*, the Missouri Supreme Court indicated that it had not previously set

forth the ultimate facts necessary to support an aiding/abetting claim under section

213.070.1(1).  *Matthews*, 685 S.W.3d at 369.  The *Matthews* Court then indicated that it

found the following to be persuasive:

13

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. To determine whether a defendant provided substantial encouragement or assistance, the Court considers the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other, and his state of mind.

*Id.* at 369 (internal quotations, citations, brackets, and ellipses omitted). "Employment discrimination cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Id.* at 369-70 (internal quotations and citation omitted).

Vega's claim of aiding/abetting was based on her allegations that the Commission aided her prior employer through the Commission's intentional delay in processing Vega's charge of discrimination against her former employer and in unjustifiably refusing to issue Vega a right to sue notice under circumstances in which section 213.111.1 required the Commission to do so. Vega asserted that she was entitled to a right to sue notice in January of 2022, and that she needed a right to sue notice in order to exercise her statutory right to a civil action such that the Commission provided substantial encouragement to Vega's former employer when the Commission wrongfully refused to issue a right to sue notice until 424 days after the filing of her charge of discrimination, (which, we note, was six weeks after the date that Vega agreed would be acceptable).[5]

---

[5] Vega alleged that she agreed to allow the Commission, at the Commission's request, additional time beyond the statutory 180-day period, provided that the Commission issued Vega a right to sue notice by August 19, 2022. Vega alleged that, despite her cooperation with the Commission, the Commission refused to honor this agreement and did not issue the right to sue notice until six weeks after the date agreed to by both parties. Vega alleged that, although she was entitled to a

Essentially, Vega took the position that a delay in the processing of a charge of discrimination operates to the detriment of the complainant and works to assist the respondent named in the complaint, and, that, because the Commission wrongfully withheld issuance of a right to sue letter, the Commission provided substantial encouragement to Vega's former employer.

Having reviewed the considerations set forth in *Matthews*, we find that, as a matter of law, the Commission's administrative delay as alleged in this case did not constitute substantial encouragement or assistance as is required in order to support an aiding/abetting claim. In this matter, there are no allegations indicating that the Commission had any involvement with the unlawful practice allegedly committed by Vega's former employer. Rather, the allegations indicate that the Commission's role in the commission of that practice was in its processing of the charge of discrimination filed by Vega after the unlawful practice alleged had already occurred. There are no allegations that the Commission had a relationship with Vega's former employer outside of investigating and processing Vega's charge of discrimination. There are no allegations of the specific act encouraged. Rather, Vega's claims are based on a theory that the Commission provided assistance or encouragement long after the completion of the

---

right to sue notice when she requested one 182 days after she filed her charge of discrimination, the Commission did not issue one until September 30, 2022 – 424 days after the filing of her charge. Despite having alleged this excessive delay in issuing the right to sue notice, much of the delay was effectively authorized by Vega, when she agreed to allow the Commission additional time, such that the Commission's issuance of the right to sue notice occurred six weeks after the date to which Vega had agreed.

allegedly unlawful act.[6]  There are no allegations that the Commission's delay ultimately

extinguished Vega's ability to pursue a private right of action against her former

employer.  Even accepting the allegations in Vega's petition as true, Vega failed to allege

facts sufficient to meet the requirement that the Commission provide substantial

encouragement or assistance to the alleged perpetrator of the unlawful act (Vega's former

employer).  Consequently, Vega failed to state a claim for aiding/abetting pursuant to

section 213.070.1(1).

## Retaliation

Regarding Vega's claim for retaliation, section 213.070.1(2) provides that it is an

unlawful discriminatory practice for an employer to "retaliate or discriminate in any

manner against any other person" because such person has engaged in specified protected

activity including opposing any practice prohibited by the MHRA, filing a complaint, or

participating in proceedings under the MHRA.  As interpreted by Missouri courts, Vega

was required to show (1) that she participated in protected activity, (2) that the

Commission took adverse action against her; and (3) a sufficient causal relationship

existed between her protected activity and the adverse action.  *See Eivins v. Missouri*

*Dep't of Corrs.*, 636 S.W.3d 155, 180 (Mo. App. W.D. 2021).  Regarding the adverse

action requirement, a plaintiff must show that he or she suffers damages as a direct result

---

[6] Although it is unnecessary to decide whether post hoc assistance can *ever* constitute aiding/abetting under section 213.070.1(1), it is clear from *Matthews* that the lack of presence at the time of the unlawful act tends to suggest the absence of substantial encouragement or assistance.  *See Matthews*, 685 S.W.3d at 369.

16

of the retaliation. *Id.* Although section 213.070 was drafted broadly to prohibit retaliation "in any manner," the retaliation must have an "adverse impact on the plaintiff before it becomes actionable." *Kader v. Bd. of Regents of Harris-Stowe State Univ.*, 565 S.W.3d 182, 189-90 (Mo. banc 2019) (citation omitted). "An action is not adverse simply because it is upsetting or disappointing" to the complainant. *See id.* at 190.

In this matter, Vega alleged that the Commission retaliated against her for filing a complaint with the Commission. Vega alleged that she was damaged by the Commission's delay in issuing a right to sue notice because she incurred additional costs in suing her former employer and was required to endure unwarranted delays in her efforts to vindicate her rights against her former employer due to the Commission's refusal to issue a right to sue notice under circumstances in which the law required the Commission to do so. There are no allegations that, aside from a six-week delay beyond a date that Vega agreed would be acceptable, the Commission ultimately extinguished Vega's ability to pursue a remedy in a suit against her former employer.

Vega is attempting to sue the Commission for retaliation based on allegations that the Commission took adverse action against Vega because Vega filed a complaint with the Commission. This matter is unusual in that section 213.075.1 instructs persons claiming to be aggrieved by an unlawful discriminatory practice to file a complaint with the Commission. In other words, Vega seeks to sue the administrative agency that processes MHRA complaints for retaliating against her ***because*** she filed an MHRA complaint with the agency that processes such complaints.

17

We recognize that the MHRA does not categorize the Commission separately from other employers. *See* §§ 213.010(8), 213.070.1; *see also Howard v. City of Kansas City*, 332 S.W.3d 772, 788 (Mo. banc 2011) (recognizing that the inclusion of the state and its subdivisions in the definition of employer under section 213.010 indicates that "the legislature intended to treat the state and its subdivisions in the same manner as it treats other employers"). However, it is inescapable that the Commission holds a unique place under the MHRA in that the Commission is the agency tasked with processing complaints under the MHRA. *See* § 213.030.1. Regarding the Commission's role in processing charges of discrimination, Missouri courts have long recognized that the Commission's resources are very limited, and that the Commission will sometimes fail to discharge its statutory duties in a thorough manner. *See Igoe v. Dep't of Lab. & Indus. Rels. of Mo.*, 152 S.W.3d 284, 287 (Mo. banc 2005). In recognizing that the Commission's performance of its statutory duties may sometimes lack thoroughness or be subject to delays, Missouri courts have also recognized that the General Assembly has provided complainants an alternative avenue toward a remedy in order to preserve a complainant's rights under the MHRA where the Commission has not completed its administrative processing within 180 days. *See id.* at 287; *see also Najib*, 645 S.W.3d at 547; *State ex rel. Green v. Missouri Comm'n on Human Rights*, 648 S.W.3d 31, 41 (Mo. App. W.D. 2022) (citation omitted).

Where the Commission has issued a final decision, order, or finding, persons aggrieved may seek judicial review of such decisions, findings, and orders pursuant to

18

section 213.085. This provision of judicial review generally indicates that the General Assembly would not contemplate that the Commission would be subjected to a private action for damages for the erroneous processing of complaints when such errors could be corrected through the judicial review process. When such corrections are necessary, extended periods of time often elapse throughout the judicial process, such that extended delays, although clearly intended to be rare, are occasionally tolerated under the MHRA.

We do recognize that the real complaint in Vega's allegations is not merely that the Commission may have performed its responsibilities poorly or dragged its feet in processing Vega's complaint (issues for which the private enforcement action is intended to provide an alternative avenue to a remedy for the discrimination underlying the complaint when the Commission fails to complete its processing within 180 days); but rather that, when Vega sought to take matters into her own hands and pursue that alternative avenue to a remedy as expressly provided under section 213.111.1, the Commission refused to act in a timely manner that would allow her to do so.

In assessing whether the Commission's delay in issuing a right to sue letter constituted an actionable wrong under section 213.070.1(2), it is necessary to consider whether the Commission's wrongful delay in issuance of a right to sue letter constituted an adverse action with an actionable adverse impact for purposes of the MHRA. *See Kader*, 565 S.W.3d at 189-90. Regarding this consideration, we find it significant that the defendant is the Commission – the agency that processes MHRA claims – and that the adverse action alleged is based on the Commission's actions with regard to a complaint

19

that the Commission was processing.  Although we recognize that the Commission's delay (as alleged in Vega's petition) was not in compliance with the Commission's ministerial duty under section 213.111.1, the Commission did ultimately provide Vega with a right to sue letter six weeks after a date that Vega had agreed would be acceptable. We note that Vega's petition contains no allegations that the Commission's actions extinguished Vega's ability to pursue the remedies available in the private enforcement action pursuant to section 213.111.1.  Thus, despite the Commission's delay in issuing a right to sue notice, Vega's right to pursue her claims of discrimination against her former employer was ultimately preserved.  We also note that the adverse impact asserted by Vega involved the dilatory effects of the Commission's actions on Vega's suit against her former employer rather than independent harms directly caused by the Commission.

Because there are no allegations that the Commission extinguished Vega's ability to pursue a private enforcement action against her former employer pursuant to section 213.111.1, and because Vega is not asserting a new independent harm as a direct result of the Commission's conduct, we find that, as a matter of law, Vega has failed to state a claim for retaliation under section 213.070.1(2).[7]

---

[7] In concluding that the Commission's delay in issuance of a right to sue notice under the circumstances alleged in the petition does not constitute an actionable harm under the MHRA so as to give rise to an action for damages, we do not suggest that the Commission is free to circumvent the law.  Other mechanisms are available to compel the Commission to perform the ministerial duties required of it by law.  Circuit courts have authority to "issue and determine original remedial writs[.]"  Mo. Const. Art. V, § 14.  The writ of mandamus will compel an administrative body or officer to perform a ministerial duty that the administrative body or officer charged with such duty has refused to perform.  *Furlong Companies v. City of Kansas City*, 189 S.W.3d 157, 165-66 (Mo. banc 2006) (citing *State ex rel. Phillip v. Pub. Sch. Ret. Sys.*,

20

**Conclusion**

The judgment is affirmed. [8]

_____
Thomas N. Chapman, Judge

All concur.

---

262 S.W.2d 569, 574 (Mo. banc 1953)). Under Rule 94, circuit courts may control certain details of the proceedings as may be necessary to give effect to the remedy requested, *see* Rule 94.01, including the time within which the respondent is ordered to answer a preliminary order in mandamus. *See* Rule 94.05.

[8] In this matter, the trial court dismissed Vega's petition with prejudice. Although sometimes a dismissal for failure to state a claim is the result of a pleading defect that may be cured by amendment, such that a dismissal without prejudice rather than with prejudice would be appropriate, nothing in our record indicates that the defects in Vega's petition could be cured by amendment.